KAREN MATTESON (Cal. Bar No. 102103)
Email: mattesonk@sec.gov
LUCEE KIRKA (Cal. Bar No. 121685)
Email: kirkal@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
C. Dabney O'Riordan, Associate Regional Director
Alka N. Patel, Associate Regional Director
John W. Berry, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>MANUEL E. JESUS, aka MANNY BACKUS; WEALTHPIRE, INC.; and ROBERT C. JOINER,<br><br>Defendants. | Case No. 2:16-cv-06850<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a). Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in

1. connection with the transactions, acts, practices and courses of business alleged in this Complaint.

2. Venue is proper in this district pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district. In addition, venue is proper in this district because Defendant Manuel E. Jesus aka Manny Backus ("Backus") resides in this district, the primary place of business of Defendant Wealthpire, Inc. ("Wealthpire") is located in this district, and Defendant Robert C. Joiner ("Joiner") transacts business in this district.

## SUMMARY

3. From at least January 2012 through at least September 2014, Backus and his company, Wealthpire, defrauded subscribers and potential subscribers to First Hour Trading, an on-line "chat room" run by Joiner under Backus' supervision, and two stock picking "alert services" offered by Backus and Wealthpire, Portfolio Crafter and Consensus Picks (collectively, the "Alert Services"). Backus and Wealthpire made materially false statements in advertisements for these Alert Services that generally fell into three categories: (1) that Backus, who touts himself as a stock trading "prodigy," was the source of the stock recommendations for the First Hour Trading and Portfolio Crafter services; (2) that Backus himself was trading in the stocks recommended by those services; and (3) that previous trading recommendations by the Consensus Picks service had yielded huge past returns. Backus' and Wealthpire's false statements were intended to induce investors to subscribe to the Alert Services.

4. Additionally, pursuant to instructions from Backus, until approximately late spring 2014, Joiner operated the First Hour Trading online chat room, posed as "MANNY_BACKUS," during the chat room sessions, and falsely represented that he (as Backus) was buying and selling certain recommended stocks when no such transactions were actually taking place.

COMPLAINT 2

5. By engaging in this conduct, Backus, Wealthpire and Joiner violated the antifraud provisions of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. As a result of their fraud, Backus and Wealthpire received $1,135,145 in ill-gotten gains from subscription fees for the Alert Services. Joiner received $67,649 for his participation in the First Hour Trading fraudulent scheme.

## THE DEFENDANTS

6. **Manuel E. Jesus aka Manny Backus** resides in Pacific Palisades, California. Backus is the president and sole owner of Wealthpire.

7. **Wealthpire, Inc.** is a California subchapter S corporation formed in August 2006 and headquartered in Santa Monica, California. Wealthpire's alert services included First Hour Trading and Portfolio Crafter, both of which Wealthpire stopped offering in 2014, and still include Consensus Picks.

8. **Robert C. Joiner** resides in Raleigh, North Carolina. Joiner acted as the editor for First Hour Trading, selecting the stocks recommended by that service, and ran that service's chat room pursuant to instructions from Backus.

## THE FRAUDULENT SCHEME

**A.    Backus and Wealthpire Solicit Subscribers, Touting Backus' Purported Background as a "Stock Trading Whiz Kid"**

9. From January 2012 through at least September 2014, Backus and Wealthpire sought new paying subscribers for the Alert Services through various means, including mailing promotional materials and sending mass emails to non-subscribers on "lead lists" rented by Wealthpire, sending emails to Wealthpire's then-existing subscriber base, and mailing and/or emailing promotional materials to nonsubscribers and current subscribers. Although each Alert Service had a different investment focus, all three Alert Services told investors which stocks to buy, when to buy them, how much to pay for them, and at what price to sell them.

10. From January 2012 through at least September 2014, Wealthpire's

advertisements for the Alert Services emphasized Backus' purported biography. Through Wealthpire advertising materials and websites, Backus promoted himself as a stock picking "prodigy." He proclaimed himself to be a "math whiz" and boasted of his "skyscraping" IQ and training as a professional chess player. Backus claimed to be known as the "Stock Trading Whiz Kid" and "the untutored prodigy of stock investing" and claimed that by the age of 19 he was actively trading in the market with "real money." Wealthpire materials claimed that Backus made millions, and that he then decided to help other investors by starting an alert service that let traders copy his every trading move.

### B. Defendants' Fraudulent Conduct

11. From at least January 2012 through at least September 2014, Backus and Wealthpire caused the Wealthpire website, and advertisements and promotional materials for the Alert Services, to contain materially false statements. The false statements were designed to attract new subscribers to the Alert Services, or to induce existing subscribers to subscribe to additional Alert Services.

12. Backus had ultimate control over Wealthpire, the content of its website, and the advertisements concerning the Alert Services. Backus reviewed, revised and approved Wealthpire's advertisements for each of the Alert Services and instructed Joiner how to conduct the First Hour Trading chat room sessions, during which Joiner made additional materially false representations.

#### 1. The First Hour Trading Scheme

13. First Hour Trading featured a stock trading program in an online chat room. First Hour Trading's subscribers were given buy and sell recommendations in real time by chat room alerts.

14. Advertisements and promotional materials for First Hour Trading falsely stated the recommended stock picks were made by Backus himself or through methods he developed. Direct mail ads Wealthpire sent in April 2012 and January 2013 claimed that Backus, a "math whiz," noticed unique patterns in a small group of

stocks that took place in the first hour of trading each day. In those ads, a quotation attributed to Backus next to his photo stated, "I've created a tool that can predict the exact movements of select stocks at an exact point in time, all with unprecedented precision!" In those same ads, Backus and Wealthpire also claimed that Backus selected stocks using a proprietary stock analyzing tool that told him the exact price at which to buy or sell the stocks and the exact minute to get out. Backus and Wealthpire repeated this representation in email advertisements they sent in November 2013 to potential subscribers, as well as on Wealthpire's website as late as January 2014.

15. In fact, First Hour Trading's recommended stock picks were not selected by Backus; nor were methods he developed used to make the stock picks. Rather, Joiner made the stock picks, and Backus never gave Joiner guidance on how to make them.

16. Wealthpire's advertisements for First Hour Trading also falsely stated that subscribers logging in to the chat room would watch Backus pick and trade stocks in real time and trade alongside him. The First Hour Trading advertisements, mailed in April 2012 and January 2013, are replete with such statements, attributed to Backus: "Watch me pick and trade stocks in real time on your computer . . . Copy and paste my trades into your own account and profit along with me" and "…[E]very day, I'm putting my own money where my mouth is by making the very same trades I'm recommending to you." Backus and Wealthpire made similar claims in other promotional materials, including a 2012 catalog sent to prospective investors and an October 2013 PowerPoint presentation located on Wealthpire's website.

17. Until approximately late spring 2014, Wealthpire's statements in the online chat room falsely represented that Backus was leading the chat room sessions and was actually trading in the recommended stocks. For example, the written introduction to the January 29, 2013 chat room session viewed by subscribers when they logged in to the chat room explained: "'Doorbell' and 'Boing' are sounds used

to warn you of a stock trade. You'll hear these sounds every time Manny makes a transaction." At the beginning of the session, participants were informed that "MANNY_BACKUS is the host." And, throughout the session, a participant – in fact, Joiner – identified as "MANNY_BACKUS" represented that he had bought and sold certain stocks at specific prices.

18. The statements in the advertisements and chat room sessions were false. Backus did not participate in the chat room. Instead, pursuant to Backus' instructions, Joiner participated in the chat room, signed in using a password supplied by Backus, and posed as "MANNY_BACKUS." Moreover, neither Backus nor Joiner actually engaged in real-time trading during the chat room sessions. Joiner nevertheless used the terms "bought" and "sold" during the chat room sessions, as instructed by Backus.

19. Because Joiner was not actually engaged in real-time trading, the prices at which he told chat room participants he was executing trades were, in many cases, no longer available. Investors were therefore not able to replicate the purported trades and profit in the manner represented by Backus and Wealthpire in the promotional materials for First Hour Trading.

20. Joiner's compensation for his work on First Hour Trading was structured to incentivize him to retain subscribers. Specifically, Wealthpire paid Joiner a flat fee for leading the chat room, but also paid him $10-$15 per subscriber. Joiner received $67,649 during the relevant period for his participation in the fraudulent First Hour Trading scheme.

### 2. The Portfolio Crafter Scheme

21. Until Wealthpire discontinued Portfolio Crafter in 2014, that alert service offered subscribers two model portfolios, one with a short term focus and one with a long term focus.

22. Wealthpire sent Portfolio Crafter subscribers buy and sell email alerts that linked to Wealthpire's website. The stock recommendations and trades made by

Wealthpire were described in the "members only" section on Wealthpire's website that was only available to paid subscribers.

23. Backus and Wealthpire made materially false statements in both the advertising materials for Portfolio Crafter and in the daily email alerts sent to subscribers. Wealthpire's website in November 2013, a catalog Wealthpire mailed to potential investors in 2012, and other materials sent to trial and new subscribers claim in multiple places that all investors needed to do was copy Backus' trades and they would get the same results he did. For example, Backus stated on Wealthpire's website: "All you have to do is copy my trades and you will get the same results I get." Backus further emphasized that investors should "copy **all** – not just some – of my trades because **my results don't lie**." (Emphasis in original). In November 2013, Backus claimed on Wealthpire's website that he had created several "proprietary indicators" that he used to identify stocks that would generate high returns in short periods. In their email alerts to subscribers, including in January 2014, Backus and Wealthpire represented that certain stocks had been sold or purchased.

24. These statements were all false. As was the case with other alert services, Backus did not actually make the recommended trades. Moreover, Backus hired an independent contractor to make the stock recommendations, and the contractor was not given any "proprietary indicators" to use in making those recommendations.

### 3. The Consensus Picks Scheme

25. Consensus Picks is a stock picking alert service that provided weekly buy and sell alerts to subscribers by email beginning in at least March 2012. During the period March 2012 through sometime in 2014, Backus selected the stocks for Consensus Picks and an editor he had hired then prepared an analysis and selected the prices at which to buy or sell the stocks.

26. Backus and Wealthpire made materially false statements that claimed

fantastic returns and incredibly high stock pick success rates by Consensus Picks. For example, in a direct mail ad sent to potential Consensus Picks subscribers in March 2012, Wealthpire claimed that Consensus Picks had earned 73% returns for ten years in a row.  In a separate direct mail ad, sent to potential Consensus Picks subscribers from March 2013 through September 2013, Wealthpire claimed that Consensus Picks returned 1,430.51% in 2012, and chose 48 "winners" out of 51 stock picks for a 96% "winning ratio."  This ad, a 30 page mailer, also claimed that from May to August 2012 Consensus Picks had 18 trades and 18 "Winners," a "100% Winning Ratio … 774.68% Returns," and from September to December 2012:  "16 Trades … 15 Winners … 94% Winning Ratio … 265.22% Returns."

27. In the same direct mail ad sent to potential subscribers from March through September 2013, Backus and Wealthpire lied to potential subscribers about the performance of specific, historic Consensus Picks stock picks.  The ad contained three charts listing stocks, including the purported entry price and exit price for each, which they represented were based on the "CP method."  The charts also included the purported corresponding gain or loss for each stock.

28. In all of these materials, Backus' and Wealthpire's claims of fantastic returns and incredibly high stock pick success rates were false.

29. Similarly, the purported performance figures for the historic stock picks included in the 2013 Wealthpire advertisement were false.  Backus and Wealthpire in fact failed to follow their own purported buy and sell methodology when computing the returns.  Specifically, Backus and Wealthpire disregarded instances where a stock's price fell to the recommended "stop price" – which would have caused a subscriber to sell stock at a loss.  Backus and Wealthpire also disregarded instances where a stock's price never reached its "target price," and, therefore, would not have caused an investor to sell stock and lock in a gain.  As a result, approximately 29% of the stocks for which Backus and Wealthpire provided purported performance figures reported inflated gains or minimized losses, and approximately 53% reported gains

instead of the losses that actually would have occurred if Backus' methodology had been followed.

## CLAIM FOR RELIEF

## Fraud in Connection with the Purchase or Sale of Securities

## Violations of Section 10(b) of the Exchange Act and Rule 10b-5

## (Against All Defendants)

30. The SEC realleges and incorporates by reference paragraphs 1 through 29 above.

31. By engaging in the conduct described above, Defendants Backus, Wealthpire and Joiner, and each of them, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

    (a) employed devices, schemes, or artifices to defraud;

    (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

    (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

32. By engaging in the conduct described above, each of the Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

**I.**

Issue findings of fact and conclusions of law that the Defendants committed the alleged violations.

## II.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Backus, Wealthpire and Joiner, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## III.

Order the Defendants to disgorge all funds received from their illegal conduct, together with prejudgment interest thereon.

## IV.

Order Defendant Backus to pay a civil penalty under Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VI.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: September 13, 2016

*/s/ Lucee S. Kirka*
Karen Matteson
Lucee S. Kirka
Attorneys for Plaintiff
Securities and Exchange Commission